IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD E. FREEMAN, ) | |
| on behalf of himself and ) | |
| all others similarly situated, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Civil Action No. 3:10-CV-566 |
| ) | |
| GC Services, LP, *et al.*, ) | |
| ) | |
| DEFENDANTS. ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendants GC Services, LP, GC Financial Corporation and DLS Enterprises, Inc. ("collectively GC Services"), by counsel, state the following as their Memorandum in Support of Motion To Strike Plaintiff Richard E. Freeman's ("Freeman") Motion For Class Certification:[1]

### I.   SUMMARY OF THE ARGUMENT

The Court should strike Freeman's Motion For Class Certification, because Freeman has failed to raise the class certification issue at "an early practicable time" as required by Federal Rule of Civil Procedure 23(c)(1)(A). Following the hearing on GC Services' 12(b) Motion to Dismiss Freeman's class action allegations, the Court continued the trial and gave Freeman an opportunity to conduct limited discovery to determine whether the proposed class was objectively identifiable. Freeman squandered this opportunity. GC Services timely complied with the Court's Discovery Order by producing on March 17, 2011 (1) a list of all Virginia residents who were referred to GC Services for collection of delinquent accounts with the

---

[1] GC Services reserves the right to oppose Plaintiff's Motion For Class Certification on the merits and will do so in an Opposition to Motion For Class Certification to be filed in accordance with Local Rule 7.

Department of Education ("DOE") within the relevant time period (the "List"), and (2) the Account Detail Listing (GC Services' electronic record of its collection activities) for a sampling of the persons on that list (the "Sampling"). In his Memorandum in Support of Motion For Class Certification, Freeman relies solely on the List and the Sampling to argue for certification of a class. But notwithstanding that Freeman had this information on March 17, 2011, he waited until after the close of discovery, after GC Services filed a Motion for Summary Judgment, and less than a month before trial before moving for class certification.

Freeman's late filing has prejudiced GC Services. GC Services must simultaneously defend Freeman's certification motion and prepare for trial. Indeed, GC Services' deposition designations and witness and exhibit list must be filed in the few days before their Opposition to Motion for Class Certification must be filed. In addition, Freeman's late filing may necessarily delay the determination of the issues GC Services timely raised in its Motion for Summary Judgment. Some of the issues GC Services raised (i.e. whether it has a policy and procedure to leave voicemail messages for consumers that do not contain meaningful disclosure), are defenses to the class claims, and a determination would be binding on the class only after a ruling on class certification. Moreover, Freeman's late filing may delay an expeditious disposition of the case on account of the possibility that the trial may again be continued so that there could be ample time to consider class certification, and if certification, to identify the class members.

Finally, certifying a class at this late stage of the litigation would fundamentally change the nature of the case thereby prejudicing GC Services. In the absence of a Motion for Class Certification following its March 17, 2011 production, GC Services understood that the case would go to trial on Freeman's individual claim and treated the case accordingly. If the proposed class were certified at a practicable time, GC Services would have had a fair

opportunity to defend the case as a class action and evaluate its liability on a class basis. In addition, the parties would have had the opportunity to go through orderly settlement negotiations regarding a certified class. That process cannot happen now with only a few weeks before trial. Other federal courts have refused to consider motions for class certification that were not filed at an early practicable time. This Court should do the same here and grant Defendants' Motion to Strike.

## II. RELEVANT FACTS

1. On October 7, 2010, the Court entered a pre-trial scheduling order, Pre-Trial Schedule A (D.N. 11). The Order requires the parties to comply with several pre-trial procedures that all must be accomplished between the date of the filing of this Motion and trial, including written stipulations, discovery designations, witness lists, exhibit lists, jury instructions, findings of fact and conclusions of law, and *voir dire*.

2. On October 20, 2010, the parties participated in a preliminary pretrial conference before the Honorable Robert E. Payne. Following the preliminary pretrial conference, on October 21, 2010, the Court issued an Order setting a Jury Trial for March 21, 2011.

3. Also on October 21, 2010, the Court, "having concluded that the adequacy of the Complaint in respect of the assertion of class action status is questionable under the precepts announced by the Supreme Court of the United States in *Bell Atlantic v. Twombly*, 127 S. Ct. 1995 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)," issued an Order directing GC Services to review the Amended Complaint and, by November 21, 2010, if it be so advised, to file a motion to dismiss with supporting memorandum explaining why the Complaint is inadequate for class action purposes [D.N. 15]. The Court set oral argument on the motion to dismiss for January 18, 2011.

4. Freeman filed a Second Amended Class Action Complaint on November 4, 2011 [D.N. 23]. Thereafter, GC Services timely moved to dismiss the class claims pursuant to Federal Rule of Civil Procedure 12 [D.N. 24, 25].

5. On January 18, 2011, the Court held a hearing on GC Services' Motion to Dismiss Freeman's class action claims in the Second Amended Complaint. The Court denied the motion as premature, ordered the parties to meet and confer over the bounds of Freeman's discovery requests and suspended GC Services' obligation to respond to any additional discovery requests pending the entry of a discovery order. (*See* 1/31/11 Memo. Order)[D.N. 33].

6. On March 3, 2011, the Court held a telephone conference to discuss the discovery issues that the parties could not resolve during their meet and confer. (*See* D.N. 37). During the telephone conference, the Court continued the trial to October 17, 18 and 19, 2011. (*Id.*). Based on the Pre-Trial Schedule A (D.N. 11), discovery closed on September 2, 2011. (Id. at ¶ III(C)). The deadline to file a Motion for Summary Judgment was September 7, 2011 (*Id.* at II (C)).

7. On March 9, 2011, the Court entered a Discovery Order [D.N. 38]. In the Discovery Order, the Court ordered GC Services to produce, on or before March 17, 2011, "in order for the Court to determine whether the class that Plaintiff proposes is objectively identifiable," the following:

   a. A list of the names of all Virginia residents who have an account with the Department of Education who were referred to Defendant for collection between August 12, 2009 and March 17, 2011 (the "List"); and

   b. The Account Detail Listing for a random sample of 100 of the individuals on the List.

8. On March 17, 2011, GC Services produced the List and the random sample of Account Detail Listings.

9. The Discovery Order also provided the opportunity for the parties to file a status report with the Court that could include "whether any party believes that additional discovery must be conducted in order to determine whether a class can be certified." (*Id.*).

10. Freeman did not file a status report or otherwise request from the Court leave to serve any additional discovery in order to determine whether a class can be certified.

11. On September 7, 2011, GC Services filed a Motion for Summary Judgment [D.N. 50] and supporting Memorandum [D.N. 51].

12. Freeman filed his Motion For Class Certification [D.N. 53] and supporting memorandum [D.N. 54] on September 20, 2011, less than a month before trial.

### III. ARGUMENT

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. Pro. 23(c)(1)(A). "Although many circumstances may justify deferring the certification decision, active management may be necessary to ensure that the certification decision is not unjustifiably delayed." Advisory Committee Notes to 2003 Amendments to Fed. R. Civ. Pro. 23.

### A. Freeman Had The Duty To Bring The Issue Of Class Certification Before The Court At An Early Practicable Time.

A plaintiff seeking class certification has the duty to bring the issue of class certification before the Court at an early practicable time. *Carrachter v. Morgan*, 491 F.2d 458, 459 (4th Cir. 1973)("Not only is the burden of proof on the plaintiff [to meet the prerequisites of Rule 23(c)(1)], it is the duty of the plaintiff to bring the matter before the court for a determination in accordance with Rule 23(c)(1)."); *United States v. Sch. Bd. of City of Suffolk*, 418 F. Supp. 639,

646 (E.D. Va. 1976), aff'd in part, rev'd in part on other grounds, 566 F.2d 1201 (4th Cir. 1977)(accord).

"When a motion to certify a class is filed late in the litigation, a court must determine whether (1) there is a reasonable explanation for the delay, and (2) whether the defendant will be prejudiced by the delay." *Balarezo v. Nth Connect Telecom, Inc.*, 2011 WL 1344250, *2 (citing William B. Rubenstein, et al, Newberg on Class Actions § 3:43 (4th Ed. 2010)); *compare Walker v. Columbia University*, 62 F.R.D 63 (1973)(not requiring a showing of prejudice but instead stating that "[t]he public business of the court, however, has been hampered and delayed"). A number of federal courts have refused to consider a motion for class certification that was not filed at an "early practicable time." *See, e.g., Wilcox v. Taco Bell of America, Inc.*, 2001 WL 344261, *2 (M.D. Fla. 2011)(granting a defendant's motion to strike based on plaintiff's failure to timely file a motion for class certification on the grounds that "[d]elay by a representative plaintiff impedes the court's consideration of the issue and may prejudice the rights of class members"); *Ramos-Barrientos v. Bland*, 2009 WL 3851624, *4-5 (S.D. Ga. 2009)(denying plaintiff's motion for class certification based on delay and failure to file within time period required by local rule); *Kimoto v. McDonald's Corps.*, 2008 WL 4690536, *3 (C.D. Ca. 2008)(finding that a motion for certification filed two months before trial "in and of itself warrants denying class certification"); *Kapiti v. Kelly*, 2008 WL 3874310, *3 (S.D. N.Y. 2008)(denying a motion for class certification filed nearly a year after the Complaint was filed and "barely one month before the close of discovery" as "not merely untimely but prejudicially so."); *see also Sterling v. Environ. Control Bd. of City of New York*, 793 F.2d 52, 58 (1986)(decided prior to 2003 amendments to Rule 23 changing "as soon as practicable after commencement of an action" to "at an early practicable time")("affirming the district court's

6

denial of a motion for class certification on the grounds that "a party's failure to move for class certification until a late date is a valid reason for denial of such motion"); *Green v. Philbrook*, 576 F.2d 440, 446 (2nd Cir. 1978)(accord); *Walker*, 62 F.R.D at 63 (granting a motion to dismiss on the grounds that plaintiffs "have not offered a valid excuse for their failure to make a timely motion" and stating that "since the action cannot go forward until it has been determined to be a class action, it is important that a determination occur early in the litigation."); *Adise v. Mather*, 56 F.R.D. 492, 495 (D. Colo. 1972)(denying a motion to certify a class on the grounds that "[d]elay in bringing the class action question before the Court delays the pretrial proceedings and the ultimate disposition of the litigation… [the court] cannot and should not condone the delay.").

### B. Freeman Failed To Bring The Issue Of Class Certification Before The Court At An Early Practicable Time.

#### 1. On March 17, 2011, Freeman Had All Of The Information Upon Which He Relies To Attempt To Meet Rule 23's Prerequisites.

Freeman failed to bring the issue of class certification before the Court at an early practicable time, because Freeman had all of the information upon which he relies to attempt to meet Rule 23's requirements when GC Services produced the Account Detail Listings sampling and the List on March 17, 2011 pursuant to the Discovery Order. Accordingly, the "early practicable time" to move for class certification was shortly after GC Services' March 17, 2011 production – not on the eve of trial.

To attempt to meet Rule 23's numerosity requirement, Freeman relies on the sampling of the Account Detail Listings GC Services produced in discovery:

> [The] sample of 81 Account Detail Listings [GC Services] produced to Plaintiff pursuant to Discovery Order of March 9, 2011 [] show that Defendant GC Services left telephone messages regarding obligations allegedly due to the U.S. Department of Education with 60 Virginia residents containing the abbreviation LW ("left word") or LMTC ("left

message to call") or LMTCB ("left message to call back") which like the telephone messages left for Mr. Freeman which [sic] did not identify GC Services as the caller and/or do not state that the message was from a debt collector, 74.07% of the sample.

(Memo. Supp. Mot. For Class Certification at p. 7). He argues that "the Sample of the Account Detail Listings provided by Defendants alone shows that [GC Services] left telephone messages like those left for Mr. Freeman which failed to identify GC Services and/or state that the call was from a debt collector for 60 Virginia residents regarding obligations allegedly owed or due DOE during the relevant time." (Id.). He also argues that numerosity can be determined by "applying the percentage of messages derived from the sample" to the number of DOE accounts on the List. In either case, on March 17, 2011 Freeman had the information that he now relies upon to support his argument that his proposed class meets Rule 23's numerosity requirement.

Likewise, upon GC Services' March 17, 2011 production, Freeman had the information upon which he relies to support his argument that his proposed class meets Rule 23's commonality requirement. In his Memorandum, Freeman contends that the "principal legal issue is whether [GC Services'] telephone messages violated the FDCPA." (Id. at p. 10). He asserts that "the voicemail messages failed to identify the caller and/or failed to state that the call was from a debt collector," thereby constituting an FDCPA violation. (Id. at 3, 10). He contends that "each class member received a telephone message from [GC Services] which failed to identify the caller and/or state that the call was from a debt collector." (Id.). His basis for his conclusion that each class member received a telephone message that violated the FDCPA is GC Services' sample of Account Detail Listings produced on March 17, 2011: "Defendants have provided a sample of Account Detail Listings which demonstrates that telephone messages like those left on Plaintiff's answering machine failed to identify GC Services as the caller and failed to state that the call was from a debt collector." (Id.).

Similarly, on March 17, 2011 Freeman had the information upon which he relies to support his argument that his proposed class meets Rule 23's typicality requirement. In his Memorandum, Freeman does not address Rule 23's typicality requirement other than to suggest that "typicality is inherent in the class definition, i.e. each of the class members received a similar telephone message which failed to identify the caller and/or state that the call was from a debt collector." (*Id.* at p. 11). He explains that his allegation is based on the Account Detail Listing sample GC Services produced on March 17, 2011. (*Id.* at 10).

Moreover, Freeman had all of the information upon which he relies to support his argument that he will provide fair and adequate protection for the interests of the class well before he filed his Motion for Class Certification. Finally, Freeman had the information upon which he relies to support his argument that questions of law or fact common to all members of the class predominate over questions pertaining to individual members upon GC Services' March 17, 2011 production. Freeman argues that:

> In this case, the 'common nucleus of operative fact' is that all class members, by definition, received telephone message(s) from Defendants which failed to identify GC Services and/or to state that the call was from a debt collector and thereby were subjected to the same violations of the FDCPA as Plaintiff.

(*Id.* at p. 15). He explains that the basis of this contention is the Account Detail Listing sample GC Services produced on March 17, 2011. (*Id.* at 10).

### 2. Freeman's Delay In Filing His Motion For Class Certification Is Unjustifiable.

Freeman's delay in filing his Motion for Class Certification is unjustifiable, because Freeman had all of the information upon which he bases his argument for class certification when GC Services produced the List and the Account Detail Sampling on March 17, 2011. Instead of filing his Motion shortly after March 17, 2011, Freeman waited until after the close of

discovery and after the deadline to file motions for summary judgment. He filed his Motion to Certify less than a month before trial – a trial that has already been continued once. Accordingly, there can be no reasonable explanation for Freeman's delay.

Freeman's delay has materially prejudiced GC Services. The parties are preparing for trial, and simultaneously being required to defend a motion for class certification impacts GC Services' ability to prepare its defense to Freeman's individual claim. In addition, GC Services is prejudiced, because Freeman's filing of his Motion For Class Certification impacts the Motion for Summary Judgment GC Services filed before Freeman filed his Motion. As a general rule, "district courts should rule on class certification requests before ruling on a summary judgment motion or otherwise ruling on the merits of the claims." *Muhammad v. Giant Food, Inc.*, 108 Fed. Appx. 757, 763 (4th Cir.2004) (citing *Nance v. Union Carbide Corp.*, 540 F.2d 718, 723 n. 9)(4th Cir.1976), vacated in part on other grounds, 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977)). For the reasons stated in GC Services' Memorandum in Support of Motion for Summary Judgment, GC Services is entitled to summary judgment on issues that would also be a defense on the merits to the claims brought by the proposed class, including (1) whether the voicemail messages at issue in this case, which Plaintiff contends were similar to the voicemail messages left for the proposed class members, were misleading, (2) whether GC Services has a "standard practice and procedure" not to provide in a voicemail message left for a debtor that the message is from GC Services, a debt collector, and (3) whether GC Services has a bona fide error defense. (*See* Memo. Supp. Mot. for S. J.)(D.N. 51). If the Court were to consider Freeman's Motion for Class Certification at this late stage, it would also have to delay a ruling on GC Services' Motion for Summary Judgment so that any decision on the merits would be binding on the class. That would be unfair. Finally, Freeman's late filing prejudices GC

Services, because class certification would fundamentally change the nature of the case. If the case was to be so changed, it should have become a class action early in the litigation so that GC Services would have had a fair opportunity to defend the case knowing that it was a class action and to evaluate its liability on a class basis.

## CONCLUSION

WHEREFORE, Defendants GC Services, LP, GC Financial Corporation and DLS Enterprises, Inc. respectfully request that the Court strike Plaintiff's Motion For Class Certification and grant Defendants such further relief as the Court deems appropriate.

Dated: September 23, 2011

Respectfully submitted,

GC Services, LP

By: _____/s/_____
Charles M. Sims, Esq. (VSB No. 35845)
John "Jack" M. Robb, III, Esq. (VSB No. 73365)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
charles.sims@leclairryan.com
jack.robb@leclairryan.com
*Counsel for Defendants GC Services, LP,
GC Financial Corporation and DLS Enterprises*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jason M. Krumbein, Esq.
Krumbein Consumer Legal Services, Inc.
1650 Willow Lawn Drive, Suite 300
Richmond, Virginia 23230
Telephone: (804) 673-4358
Facsimile: (804) 673-4350
KrumbeinLaw@gmail.com

Owen Randolph Bragg
Horwitz Horwitz & Associates
25 E Washington St
Suite 900
Chicago, IL 60602
(312) 372-8822
Fax: (312) 372-1673
rand@horwitzlaw.com

Joelle Erica Gotwals
Law Office of Joelle Gotwals
P.O. Box 11133
Manassas, VA 20113-0133
571-377-8538
jgotwals@gmail.com
*Counsel for Plaintiff Richard E. Freeman*

                                  /s/
John "Jack" M. Robb, III, Esq. (VSB No. 73365)
LeClairRyan, A Professional Corporation
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
(804) 915-4138 Telephone
(804) 916-7238 Facsimile
jack.robb@leclairryan.com
*Counsel for Defendants GC Services, LP, GC Financial Corporation and DLS Enterprises, Inc.*